J. J. Hastings v. Commissioner. Emma Hastings v. Commissioner.
Hastings v. Commissioner
Docket Nos. 30841, 30842.
United States Tax Court
1952 Tax Ct. Memo LEXIS 247; 11 T.C.M. (CCH) 399; T.C.M. (RIA) 52113; April 22, 1952
Arthur Glover, Esq., for the petitioners. Frank C. Allen, Esq., for the respondent. JOHNSON Memorandum Findings of Fact and Opinion JOHNSON, Judge: The respondent determined deficiencies in income tax for the year 1947 as follows: Docket No.
Petitioner
Deficiency
30841
J. J. Hastings
$1,503.25
30842
Emma Hastings
1,503.25
In this consolidated proceeding the issues presented *248 are: (1) Did respondent err in incrasing petitioners' income in the taxable year by including therein the dividend payment of July 18, 1947, on 411 shares of stock? (2) Were petitioners entitled to report the gain from the sale of 411 shares of stock on the installment basis under the provisions of section 44 (b), I.R.C.? A part of the dividend adjustment determined in the notice of deficiency is not contested by the petitioners. Findings of Fact Petitioners, husband and wife, resided at Amarillo, Texas, in the taxable year 1947. They filed separate income tax returns on the community property basis with the collector of internal revenue for the second district of Texas, at Dallas. J. J. Hastings will be referred to as the petitioner. Petitioner held some 411 shares of stock in the Cannon Gasoline Company, Inc. (hereinafter referred to as the Company), a company which he helped found in 1922. He was also president of the board of directors. On July 2, 1947, the petitioner and John Farrell, without the advice of counsel, signed the following agreement: "Mr. J. J. Hastings of Amarillo, Texas, party of the first part and John Farrell of Amarillo, *249 Texas, party of the second part. The above parties hereafter will be called party of the first part and party of the second part. "Party of the second part agrees to purchase from party of the first part four hundred and eleven (411) shares of Cannon Gasoline Company, Inc., stock for $41,000.00. This represents 411 shares of a total 1200 shares of stock in the Cannon Gasoline Company, Inc." "To be paid as follows: $11,000.00
Down payment
10,000.00
1 yr. from date of sale with 4%
interest
10,000.00
2 yrs. from date of sale with 4%
interest
10,000.00
3 yrs. from date of sale with 4%
interest
$41,000.00
Total selling price" On the same day Farrell gave petitioner a $1,000 check, dated June 25, 1947. No further transactions concerning the sale were undertaken for the following two weeks because Farrell was away on vacation. A special meeting of the board of directors of the Company was held on July 18, 1947, for the purpose of considering the payment of a dividend. After due consideration a motion to pay a dividend amounting to $12.50 a share was seconded and passed. The Company sent petitioner and his wife two checks, dated July 22, 1947, totaling *250 $5,137.50 (411 X $12.50), as their share of the dividend declared on July 18. Farrell was not apprised of the fact that the Company declared a dividend until after the dividend checks were delivered to the petitioner and his wife. Farrell then demanded the dividend checks. After negotiating with Farrell and his attorney, petitioner delivered the checks to Farrell. On his 1947 income tax return Farrell reported the dividend received from 311 shares of stock. [1]
On or about July 24, 1947, Farrell drew and delivered a check to the petitioner and his wife in the amount of $10,000. This check bore the notation "on purchase price of 411 shares of stock in Cannon Gasoline Company." Payment was made by the drawee bank on July 28, 1947. The stock book of the Company reveals that petitioner's stock was transferred to Farrell on July 26, 1947. In subsequent years Farrell paid petitioner the remaining $30,000, as required by the July 2 agreement. Petitioner and his wife sold their stock in Cannon Gasoline Company on July 2, 1947; the declaration *251 of a dividend on July 18, 1947, did not produce income for the petitioner and his wife. The initial payment received by petitioner and his wife for the sale of 411 shares of stock did not exceed 30 per cent of the selling price. Opinion The resolution of the first issue in this proceeding depends upon who was the beneficial owner of 411 shares of stock at the time the dividend was declared and paid, and who was, therefore, liable for the tax on the dividend. The respondent determined that the petitioner was the owner of the stock and that he received the dividend as income. On the other hand, petitioner contends that Farrell, the purchaser, owned the stock at the time the dividend was declared and paid. Dividends are usually declared payable on a certain date to shareholders of record at some earlier date. However, in the instant case, the board of directors did not follow this orderly procedure. The directors met in a special meeting on July 18, 1947, and adopted a motion for the payment of a dividend. No payment date was named, nor did they name a date when the stockholders of record would become entitled to the dividend. Logically then, the dividend payment was made subject *252 to the demands of the shareholders immediately after the board of directors passed the motion for the dividend payment. See United States v. Southwest Portland Cement Co., 97 Fed. (2d) 413. Under section 115 of the Internal Revenue Code and its corresponding regulations, "a taxable distribution made by a corporation to its shareholders shall be included in the gross income of the distributees when the cash or other property is unqualifiedly made subject to their demands." Section 29.115 (1), Regulations 111. We must now decide, between petitioner-vendor and Farrell, the purchaser, who is the distributee. The essence of a transfer of stock in a corporation is the intent of the owner to transfer title and ownership, and to determine this intent we must consider all circumstances surrounding the transaction. In reviewing the decisions of the Texas courts, we find it seems to be the rule that between transferor and transferee the transfer of title may take place though there is no delivery of the certificates themselves, or endorsement of them, or transfer of them on the books of the corporation, and even though the sale be by parol. The inquiry *253 is whether the minds of the transferor and the transferee meet, whether there was the intention that the stock should then and there be vested in the transferee, and whether there were acts in the nature of a symbolic delivery of the property. Greenspun v. Greenspun, 194 S.W. 2d 134; affd., 198 S.W. 2d 82. From the sales agreement alone we can not determine whether the agreement was executory or executed. However, the surrounding circumstances unequivocally resolve this ambiguity. The purchaser testified that he bought the stock on July 2, 1947, and from that day forward he thought he owned the stock. Even though the dividend checks were made payable to the petitioner and his wife, the facts indicate that these checks were later endorsed in blank and turned over to the purchaser. Later, when the purchaser reported his 1947 income for tax purposes, [2] he included this dividend payment as his income and paid the tax thereon. Nowhere in the entire proceedings has the petitioner asserted his right to, or made a claim for this dividend. At no time in the entire proceedings has the petitioner challenged the purchaser's right to the stock or the dividends declared *254 thereon. It appears that the respondent, not a party to the sales agreement, is attempting to construe the contract contrary to the interpretation, the intention, and the acual transfer as accomplished by the parties. Respondent's interpretation is not supported by the facts, nor the law. It has been well established that "tax officials are not required to treat as income money received by a taxpayer when, under well-settled law, his receipt of it has the effect of obligating him unconditionally to pay that money to another." Commissioner v. Turney (C.A. 5), 82 Fed. (2d) 661, affirming 31 B.T.A. 308; Estate of Arthur L. Hobson, 17 T.C. 854. The stock purchaser has already paid income tax on this dividend, and we know of no Code provision which requires the petitioner-vendor to pay a second income tax on dividend income received by the purchaser. Therefore, since it was the intention of the parties that the sale be executed on July 2, 1947, the purchaser was entitled to the July 18 dividend on the stock and such dividend is not taxable to the *255 petitioner. A second issue was raised in this proceeding when the petitioner alleged error in respondent's determination that $11,000 exceeded 30 per cent of the selling price for the 411 shares of stock. Respondent in the deficiency notice determined that the selling price of the stock was $41,000 less $5,137.50. Now respondent, in his brief, no longer contests this issue and admits that "petitioners received payment of $41,000 as consideration for the stock, rather than $35,862.50 as determined in the notice of deficiency." On the basis of the evidence submitted at the hearing no other conclusion is possible. We hold that petitioner is entitled to report the gain from the sale of 411 shares of stock under the provisions of section 44 (b). Because the deficiency notice contains other adjustments which are not contested by the petitioner, a recomputation will be necessary. Decisions will be entered under Rule 50. Footnotes
1. Farrell sold the income from 100 shares of the 411 to one McCarthy, an employee. This transaction is not involved in the present proceedings.↩
2. Farrell reported the divided on 311 shares; one McCarthy reported the dividend on 100 shares.↩